**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GORDMANS STORES, INC., *et al.*,[1] | ) | Case No. 17-80304 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION FOR AUTHORIZATION
TO PAY CERTAIN PREPETITION CLAIMS OF LIEN CLAIMANTS**

Gordmans Stores, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), respectfully state the following in support of this motion[2]:

**Relief Requested**

1.   By this motion, the Debtors respectfully seek: (a) authority to pay prepetition Lien Charges and Import Charges (each as defined herein); and (b) related relief

2.   Additionally, the Debtors respectfully request leave to submit a proposed order for the Court's consideration to grant the relief requested herein.

**Jurisdiction and Venue**

3.   The United States Bankruptcy Court for the District of Nebraska has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Nebraska General Rule 1.5 of the

---

[1]   The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, include: Gordmans Stores, Inc. (1987); Gordmans, Inc. (1211); Gordmans Management Company, Inc. (5281); Gordmans Distribution Company, Inc. (5421); Gordmans Intermediate Holdings Corp. (9938); and Gordmans LLC (1987). The location of the debtors' service address is: 1926 South 67th Street, Omaha, Nebraska, 68106.

[2]   A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of James B. Brown in Support of First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").

KE 45807866

United States District Court for the District of Nebraska. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Rule 9013-1.C of the Nebraska Rules of Bankruptcy Procedure (the "Local Rules").

## Background

6. Gordmans Stores, Inc., together with its Debtor affiliates, is a retail company engaged in the sale of apparel, home goods, and other merchandise at over 100 stores in 22 states throughout the United States and through e-commerce operations. The Debtors are headquartered in Omaha, Nebraska.

7. As of the date hereof (the "Petition Date"), each of the Debtors filed a petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no committees have been appointed or designated.

## The Lien Claimants

8. The Debtors' business depends on the uninterrupted flow of inventory and other

goods through its supply chain and distribution network, including the purchase, importation, storage, and shipment of the Debtors' merchandise and general inventory (collectively, "Merchandise"). The Debtors receive Merchandise from various domestic and international vendors (collectively, the "Vendors") at lower up-front costs due to the Debtors' business model of not requiring allowances. Merchandise is shipped from the Vendors to one of the Debtors' two distribution centers (collectively, the "Distribution Centers") which are leased and operated exclusively by the Debtors. The Distribution Centers are located in Omaha, Nebraska and near Indianapolis, Indiana. Once the Merchandise is received at the Distribution Centers, the Debtors process the Merchandise for its eventual delivery to either (a) stock the Debtors' brick-and-mortar leased stores, or (b) fulfill orders placed with the Debtors' e-commerce warehouse. The Debtors then contract with third-party shippers or their e-commerce warehouse operator, TradeGlobal, LLC to transport the Merchandise to the appropriate locations. The Debtors' operations depend on the services provided by the various third-party shippers and their e-commerce warehouse operator (collectively, the "Lien Claimants").

9. Vendors outside of the United States generally manufacture and ship Merchandise to the Debtors "free on board" ("FOB"). Under an FOB arrangement, the Debtors pay third-party shippers to transport the Merchandise and other goods from Asia, primarily China, to the Distribution Centers, and title passes to the Debtors when the Merchandise and goods are loaded for shipment to the United States. Accordingly, the foreign Vendors or the Lien Claimants may refuse to release Merchandise or other goods for shipment to the United States if they are not paid current.

10. The Debtors believe that as of the Petition Date, approximately $1.14 million of third-party shipping and storage charges (collectively, the "Lien Charges") are due and

3

outstanding for prepetition services.

11. Under certain non-bankruptcy laws, the Lien Claimants may be able to assert liens on the goods in their possession to secure payment of the charges or expenses incurred in connection with the Lien Charges.[3] Accordingly, in the event the Lien Charges remain unpaid, the Lien Claimants may attempt to assert possessory liens, and may refuse to deliver or release goods in their possession until their claims are satisfied and their liens redeemed. The Lien Claimants' possession (and retention) of the Debtors' goods and supplies would disrupt the Debtors' operations and affect the Debtors' ability to efficiently administer these chapter 11 cases. The cost of such disruption to the Debtors' estates would likely be greater than the applicable Lien Charges. Further, pursuant to section 363(e) of the Bankruptcy Code, the Lien Claimants may be entitled to adequate protection of any valid possessory lien, which would drain estate assets.

12. Accordingly, the Debtors seek authority, but not direction, to pay and discharge, on a case-by-case basis, the Lien Charges. For the avoidance of doubt, the Debtors seek authority to pay only those amounts that they determine are necessary or appropriate to (a) obtain release of critical or valuable goods, (b) maintain a reliable, efficient, and smooth distribution system, and (c) induce the Lien Claimants to continue to carry goods and make timely delivery. The Debtors intend to pay prepetition Lien Charges only where they believe, in their business judgment, that the benefits to their estates from making such payments will exceed the costs that their estates would incur by bringing an action to compel the turnover of such goods and the

---

[3] For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that "[a] carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law." *See* U.C.C. § 7-307(a) (2003).

KE 45807866

delay associated with such actions.

### The Import Claimants

13.     In the ordinary course of their business, the Debtors at times import inventory and related materials (collectively, the "Imported Goods") from vendors located in foreign countries. Timely receipt or transmittal, as applicable, of the Imported Goods is critical to the Debtors' business operations.  Any disruption or delay would adversely affect the Debtors' business operations and affect the Debtors' ability to efficiently administer these chapter 11 cases.

14.     In connection with the Imported Goods, the Debtors may be required to pay various charges (the "Import Charges"), including customs duties, detention and demurrage fees, tariffs and excise taxes, freight forwarding, and other similar obligations. The Debtors pay approximately $2.25 million annually on account of Import Charges.  The Debtors estimate that, as of the Petition Date, there are approximately $520,000 in Import Charges outstanding for goods currently in transit.

15.     The Debtors seek authority to pay any and all necessary and appropriate Import Charges incurred on account of prepetition transactions. Absent such payment, parties to whom the Debtors owe Import Charges may interfere with the transportation of the Imported Goods. If the flow of Imported Goods were to be interrupted, the Debtors may be deprived of the inventory necessary to stock the racks and shelves in their stores, which means the Debtors would not have inventory to sell to their customers.  The ultimate value of such sales is worth far more to the Debtors (both in terms of future receipts and the maintenance of valuable customer good will) than the aggregate amount of incurred, but unpaid, Import Charges.  Accordingly, the Debtors seek authority, but not direction, to pay and discharge, on a case-by-case basis, the Import Charges.

**Basis for Relief**

**I.    The Court Should Grant the Relief Requested in this Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.**

16.    Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate. *See, e.g.*, *In re Wehrenberg, Inc.*, 260 B.R. 468, 469 (Bankr. E.D. Mo. 2001) (authority to pay prepetition claims of vendors); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authority to pay prepetition wages); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

17.    Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so. *In re Trilogy Dev. Co., LLC*, 2010 Bankr. LEXIS 5636, at *3–4 (Bankr. W.D. Mo. 2010); *In re Channel One Comm., Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (citing *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)); *see also TLP Servs., LLC v. Stoebner (In re Polaroid Corp.)*, 460 B.R. 740, 741–42 (B.A.P. 8th Cir. 2011) (allowing a trustee, pursuant in part to section 363(b)(1), to use cash collateral to fund efforts to recover funds from third parties). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.

18.    In addition, courts may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or

KE 45807866

appropriate to carry out the provisions of this title." Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses. *See Bird v. Crown Convenience* (*In re NWFX, Inc.*), 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy, however, is that equitable principles govern"); *In re Wehrenberg, Inc.*, 260 B.R. at 469 ("Pursuant to 11 U.S.C. § 105(a) the Court may authorize the payment of prepetition claims when such payments are necessary to the continued operation of the Debtor.") (citation omitted); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agree to provide postpetition trade credit). Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *Ionosphere Clubs*, 98 B.R. at 176.

19.   The relief requested herein is appropriate and warranted under the circumstances. The authority to honor unpaid, prepetition Lien Charges and Import Charges in the initial days of these cases without disrupting their operations will maintain the integrity of the Debtors' supply chain, facilitate the sale of inventory, facilitate collection of the Debtors' accounts receivable, and allow the Debtors to efficiently administer these chapter 11 cases. Failure to pay the Lien Charges and Import Charges could potentially destroy value that would otherwise inure to the benefit of the Debtors' estates. Where, as here, debtors have shown that the payment of prepetition claims is critical to maximize the value of their estates, courts in this Circuit and other jurisdictions have routinely authorized payments to lien claimants. *See, e.g.*, *In re Peabody Energy Corp.*, No. 16-42529 (BSS) (Bankr. E.D. Mo. Apr. 15, 2016) (approving the payment of prepetition claims of shippers and warehousemen and service providers); *In re Noranda*

7

appropriate to carry out the provisions of this title." Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses. *See Bird v. Crown Convenience* (*In re NWFX, Inc.*), 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy, however, is that equitable principles govern"); *In re Wehrenberg, Inc.*, 260 B.R. at 469 ("Pursuant to 11 U.S.C. § 105(a) the Court may authorize the payment of prepetition claims when such payments are necessary to the continued operation of the Debtor.") (citation omitted); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agree to provide postpetition trade credit). Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *Ionosphere Clubs*, 98 B.R. at 176.

19.   The relief requested herein is appropriate and warranted under the circumstances. The authority to honor unpaid, prepetition Lien Charges and Import Charges in the initial days of these cases without disrupting their operations will maintain the integrity of the Debtors' supply chain, facilitate the sale of inventory, facilitate collection of the Debtors' accounts receivable, and allow the Debtors to efficiently administer these chapter 11 cases. Failure to pay the Lien Charges and Import Charges could potentially destroy value that would otherwise inure to the benefit of the Debtors' estates. Where, as here, debtors have shown that the payment of prepetition claims is critical to maximize the value of their estates, courts in this Circuit and other jurisdictions have routinely authorized payments to lien claimants. *See, e.g.*, *In re Peabody Energy Corp.*, No. 16-42529 (BSS) (Bankr. E.D. Mo. Apr. 15, 2016) (approving the payment of prepetition claims of shippers and warehousemen and service providers); *In re Noranda*

7

*Aluminum, Inc.*, No. 16-10083 (BSS) (Bankr. E.D. Mo. Feb. 10, 2016) (approving payment of the prepetition claims of shippers and warehousemen, mechanics and materialmen); *In re Arch Coal, Inc.,* No. 16-40120 (CER) (Bankr. E.D. Mo. Jan. 14, 2016) (approving payment of prepetition claims related to shipping, warehousing, and servicing); *see also In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Oct. 15, 2015) (approving the payment of prepetition claims of shippers and warehousemen claimants on the basis that shippers and warehousemen could refuse to deliver or return the debtors' goods if prepetition claims were not satisfied).

20. Allowing the Debtors to pay unpaid, prepetition Lien Charges and Import Charges is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust Savs. Ass'n v. 203 N. LaSalle St. P'Ship.*, 526 U.S. 434, 453 (1999). Based on these circumstances, the Debtors submit that the relief requested herein represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code.

## II. Failure to Make Timely Payment of the Lien Charges Would Threaten the Debtors' Ability to Operate and May Subject the Debtors' Assets to the Perfection of Liens.

21. As noted above, certain Lien Claimants may be entitled under applicable non-bankruptcy law to assert certain possessory liens on the Debtors' goods or equipment in their possession (notwithstanding the automatic stay under section 362 of the Bankruptcy Code) in an attempt to secure payment of their prepetition claim. Under section 362(b)(3) of the Bankruptcy Code, the act of perfecting such liens, to the extent consistent with section 546(b) of

8

the Bankruptcy Code, is expressly excluded from the automatic stay.[4] 11 U.S.C. § 362(b)(3).  As a result, the Debtors anticipate that certain Lien Claimants may assert or perfect liens, refuse to turn over goods in their possession, or stop performing their ongoing obligations.  Even absent a valid lien, to the extent that certain Lien Claimants have possession of the Debtors' inventory, mere possession or retention would disrupt the Debtors' operations.

22.    Furthermore, paying the unpaid, prepetition Lien Charges should not impair unsecured creditor recoveries in these chapter 11 cases.  In instances where the amount owed to third-party shippers is less than the value of the goods that could be held to secure a third-party shipper's claims, such parties may be fully secured creditors of the Debtors' estates.  In such instances, payment now only provides such parties with what they might be entitled to receive under a plan of reorganization, only without any interest costs that might otherwise accrue during these chapter 11 cases.  Additionally, all creditors will benefit from the seamless transition of the Debtors' operations into bankruptcy and the ultimate delivery and sale of inventory in the Debtors' stores and e-commerce channel.

### III.    Payment of Import Charges Is Appropriate and Should Be Authorized by the Court.

23.    Further, unpaid, prepetition Import Charges would likely be paid in full under any chapter 11 plan pursuant to Bankruptcy Code section 507(a)(8), which provides eighth priority status to the claims of a governmental unit based on a customs duty arising out of the importation of certain merchandise.  11 U.S.C. § 507(a)(8).  Thus, payment of the unpaid, prepetition Import Charges as proposed in the motion merely accelerates the distribution that the import providers would receive in any event upon confirmation of a plan.  Payment of the Import Charges is

---

[4]    *See* 11 U.S.C. § 546(b)(1)(A) (providing that a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection.").

9

reasonable and appropriate under the circumstances of these chapter 11 cases and should be approved. Therefore, granting the motion with respect to the unpaid, prepetition Import Charges would have no substantial effect on the relative distribution of the Debtors' assets.

24. For these reasons, courts have authorized the payment of prepetition import claims under similar circumstances in recent retail chapter 11 cases. *See, e.g.*, *In re Pac. Sunwear of Cal. Inc.*, No. 16-10882 (LSS) (Bankr. D. Del. Apr. 8, 2016) (approving payment of charges incurred in connection with the transportation of merchandise); *In re Sports Authority Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. Mar. 29, 2016) (approving payment of customs duties, detention and demurrage fees, tariffs and excise and related taxes to third party vendor); *In re Quiksilver, Inc.*, No. 15-11880 (BLS) (Bankr. D. Del. Sept. 10, 2015) (approving payment of import and export charges to third party administrator); *In re LHI Liquidation Co. f/k/a Loehmann's Holdings Inc.*, No. 13-14050 (MG) (Bankr. S.D.N.Y Jan. 16, 2014) (authorizing payment of customs duties and brokers fees in connection with importing products).[5]

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

25. The Debtors have sufficient funds to pay the amounts described in this motion by virtue of expected cash flows during the chapter 11 cases and anticipated access to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Lien Charges. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial

---

[5] Because of the voluminous nature of these orders, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

10

institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

### The Requirement of Bankruptcy Rule 6003 Are Satisfied

26.  Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, authorizing the Debtors to pay the Lien Charges and granting the other relief requested herein is essential; to the Debtors' ability to transition their operations into these chapter 11 cases and maintain the value of their estates postpetition. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' ability to maintain their estates at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Reservation of Rights

27.  Nothing contained in this motion, or any actions taken by the Debtors pursuant to relief sought in this motion, is intended or should be construed as:  (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek

KE 45807866

avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

28. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

29. The Debtors will provide notice of this motion to the following parties or their respective counsel, if known: (a) the Office of the United States Trustee for the District of Nebraska; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the state attorneys general for states in which the Debtors conduct business; (d) the Nebraska Department of Revenue; (e) the Office of the United States Attorney for the District of Nebraska; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) counsel to Wells Fargo Bank, N.A.; (i) the Lien Claimants; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

30. No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

KE 45807866

WHEREFORE, the Debtors respectfully request: (1) that the Court enter an order approving the relief sought herein; and (2) leave to submit a proposed order for the Court's consideration granting such relief.

| | |
|---|---|
| Omaha, Nebraska<br>Dated: March 12, 2017 | */s/ Lisa M. Peters*<br>Lisa M. Peters (Nebraska Bar No. 24546)<br>Jeffrey T. Wegner (Nebraska Bar No. 18265)<br>**KUTAK ROCK LLP**<br>The Omaha Building<br>1650 Farnam Street<br>Omaha, Nebraska 68102<br>Telephone: (402) 346-6000<br>Facsimile: (402) 346-1148 |

-and-

Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Brad Weiland (*pro hac vice* pending)
Jamie R. Netznik (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

KE 45807866